**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **FUTUREVISION.COM, LLC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:12-cv-386** |
| | § | |
| **TIME WARNER CABLE, INC.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORDER

Before the Court is Time Warner Cable Inc., Time Warner Cable LLC, Cequel Communications, LLC d/b/a Suddenlink Communications, Comcast of Houston, LLC, Comcast Cable Communications, and Charter Communications, LLC's ("Defendants") Motion to Transfer Venue to the District of Delaware (Docket No. 34). Having considered the parties' written submissions, the Court **GRANTS** Defendants' Motion to Transfer and **ORDERS** this action be transferred to the United States District Court for the District of Delaware.

## BACKGROUND

On June 18, 2012, FutureVision.com, LLC ("FutureVision") filed an action against Defendants alleging infringement of U.S. Patent No. 5,877,755 entitled "Interactive Broadband Multimedia System" ("the '755 Patent"). Docket No. 1. The '755 Patent generally relates to a method and an apparatus for facilitating interactive television. FutureVision is a Pennsylvania limited liability company with its principal place of business in Malvern, PA. Docket No. 1 at 2. Time Warner Cable, Inc. and Time Warner Cable, LLC (collectively, "Time Warner") are Delaware entities with their principal place of business in New York, NY. Docket No. 34,

Exhibit 10, Block Decl. at 2.   Suddenlink is a Delaware limited liability company with its principal place of business in St. Louis, MO.  *Id.*, Exhibit 7, Fitzgibbon Decl. at 2.  Comcast of Houston, LLC and Comcast Cable Communications (collectively, "Comcast") are Delaware entities with their principal place of business in Philadelphia, PA.  *Id.*, Exhibit 3, Marcus Decl. at 2.  Charter Communications is a Delaware limited liability company with its principal place of business in St. Louis, MO.  *Id.*, Exhibit 8, Abramov Decl. at 2.

## APPLICABLE LAW

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of

unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

## ANALYSIS

### A.  Threshold

Defendants assert that the District of Delaware is a proper venue because all Defendants are incorporated in the district.  Docket No. 34 at 8.  FutureVision does not dispute this claim. Docket No. 39 at 2.  Thus, there is no argument over whether the case could have been filed in the District of Delaware.

### B.  Private Factors

#### 1.  *Relative Ease of Access to Sources of Proof*

Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See id.* This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *id.* at 314–15; *In*

3

*re Nintendo*, 589 F.3d at 1199; *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

However, documents that have been moved to a particular venue in anticipation of a venue

dispute should not be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed.

Cir. 2009). Presumably, the bulk of the discovery material relating to a corporate party is located

at the corporate headquarters. *See In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010).

No party in this case is headquartered in or near the Eastern District of Texas.  Comcast is

headquartered in Philadelphia, PA, and almost all of its relevant documents are located there,

while Time Warner is headquartered in New York, NY, and its relevant documents are located in

New York, NY, Washington D.C., Charlotte, NC, and Colorado.   Docket No. 34 at 9.  The

remaining defendants, Suddenlink and Charter, are both headquartered in St. Louis, MO, and

most of their relevant documents are located there. While FutureVision attempts to skirt the

issue, declaring the location of its documents are irrelevant, FutureVision does not refute it is

headquartered in Malvern, PA, where presumably its documents are located.  Docket No. 39 at

2–3.

Defendants argue because the Plaintiff and most of the Defendants reside near the

District of Delaware, the majority of party evidence is more accessible in the proposed transferee

forum.  Docket No. 34 at 9.  Additionally, Defendants contend that the bulk of third party

sources of proof are also located near District of Delaware.  *Id.* at 10.  For example, the

prosecuting attorneys for the '755 Patent, former employees of FutureVision, the inventor of the

'755 Patent, and documents regarding third party implementations of the allegedly infringing

systems are located in the Philadelphia area.  *Id.*  Additionally, a commercial embodiment of the

'755 Patent is located in New Jersey.  *Id.*  FutureVision counters that the majority of defendants

do not have documents located near the District of Delaware.  For example, FutureVision alleges

4

Time Warner's documents are not centrally located near the District of Delaware but are rather scattered throughout the country. Docket No. 39 at 3. FutureVision also argues that Suddenlink and Charter's documents located in St. Louis, MO, which is significantly closer to the Eastern District of Texas than Wilmington, Delaware. Therefore, FutureVision argues this factor disfavors transfer.

While Time Warner admits some of its documents are not located near the District of Delaware, these documents are not located in or near the Eastern District of Texas either. Time Warner still has documents located in New York, NY and Washington DC, which are near the District of Delaware. Additionally, while St. Louis, MO is somewhat closer to this district than the District of Delaware, neither forum is actually more convenient for Charter or Suddenlink. Both parties will need to transport their documents regardless of the Court's decision here. Considering substantially all, if not all, of Plaintiff's, and Comcast's documents are located near the District of Delaware, many of Time Warner's documents are located near the District of Delaware, and several sources of third party proof are located near Delaware, this factor weighs strongly in favor of transfer.

### 2. *Convenience of Witnesses*

This factor is analyzed giving broad "consideration [to] the parties and witnesses in all claims and controversies properly joined in a proceeding." *In re Volkswagen I*, 371 F.3d at 204. All potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case or their likelihood of being called to testify at trial. *See In re Genentech*, 566 F.3d 1343 ("Requiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary.").

The Fifth Circuit has adopted a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–05. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 205. When applying the "100 mile rule" the threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). If so, then a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. The "100 mile rule" favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue. *See In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d at 1320. Furthermore, the existence or non-existence of direct flights can impact the analysis of travel time. *See In re Volkswagen I*, 371 F.3d at 204 & n.3. Thus, regardless of the "straight line" distances calculated for the "100 mile rule," if "travel time" distances favor the transferee venue, then this factor will favor transfer. However, the "100 mile rule" should not be rigidly applied. *See In re Genentech*, 566 F.3d at 1344. When a particular witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis. *See id.* (discounting European witnesses and documents transported from Washington D.C. in the convenience analysis when reviewing a denial of transfer from Texas to California).

As discussed above, Comcast and FutureVision reside in Philadelphia, and many of their witnesses are also located in Philadelphia. *Id.* at 12–13. Time Warner resides in New York, and

its witnesses are located in New York, NY, Washington D.C., Charlotte, NC, and Colorado.  *Id.* at 13.  The only parties that are not located near the District of Delaware are Suddenlink and Charter.  Both companies and their witnesses are based in St. Louis, MO, therefore neither forum is more convenient.  *Id.*  Defendants argue because the majority of relevant witnesses work or reside near the District of Delaware, this factor favors transfer.  Plaintiff does not dispute Defendants' arguments regarding this factor.

Accordingly, this factor weighs strongly in favor of transfer.

### 3.  *Availability of Compulsory Process*

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338.

FutureVision argues transfer would be inappropriate in this case, because an important third-party witness, FourthWall Media ("FourthWall"), has a business development office in Plano, TX.  Docket No. 39 at 4–6.  FourthWall has interactive television solutions, which have been deployed by some of the Defendants, namely, Charter and Time Warner.  *Id.* at 4. FutureVision anticipates it will need the testimony of FourthWall employees who work in the Plano office.  *Id.* at 5.

Defendants counter that FutureVision has misrepresented FourthWall's role in this litigation.  Docket No. 43 at 4–5.  FutureVision does not allege that FourthWall, or its products, or the use of its products infringe the '755 Patent.  *Id.*  at 4.  Defendants argue that even if the technology is relevant to this case, FourthWall's technical personnel, not its business

development staff, would have the relevant documents and knowledge about the technology.  *Id.*
at 4–5.  FourthWall's chief technology officer, chief scientist, and chief product officer, are
located near Dulles, Virginia, FourthWall's corporate headquarters, not Plano, TX.  *Id.* at 5.
Also, Defendants argue there are several third party witnesses — for example, the prosecuting
attorneys, suppliers of the accused technology, and the inventor of the '755 Patent — who reside
within the subpoena power of the District of Delaware.

Even if the Court considered FourthWall in this analysis, FutureVision has only
identified one potential third party in this district, while Defendants have identified several
within the "absolute subpoena power" of the District of Delaware.  Accordingly, this factor
strongly weighs in favor of transfer.

### 4.  Other Practical Problems

The remaining private factor is not disputed by the parties, thus it is neutral in the
analysis.

## C.  Public Factors

### 1.  Local Interest

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed
upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371
F.3d at 206. This factor analyzes the "factual connection" that a case has with both the transferee
and transferor venues. *See id.* Generally, local interests that "could apply virtually to any judicial
district or division in the United States" are disregarded in favor of particularized local interests.
*In re Volkswagen II*, 545 F.3d at 318 (in a products liability suit, disregarding local interest of
citizens who used the widely-sold product within the transferor venue); *In re TS Tech*, 551 F.3d
at 1321. Thus, when products are sold throughout the United States, citizens of a venue do not

have a particularized interest in deciding the dispute simply based on product sales within the venue. *In re Nintendo*, 589 F.3d at 1198.

Here, Defendants' headquarters are located throughout the country: New York, NY; Philadelphia, PA; and St. Louis, MO, while FutureVision is located in Philadelphia, PA. FutureVision contends that the Eastern District of Texas has a strong local interest in the underlying suit, because every Defendant provides cable services in Texas, while only one defendant provides services in Delaware.  Docket No. 39 at 6.  Additionally, FutureVision argues this district has a strong local interest because Suddenlink employs over 1,000 people in its regional headquarters in Tyler, TX.  *Id.*  FutureVision contends that the District of Delaware has no interest in the case, because none of the Defendants have employees in Delaware.  *Id.* Defendants counter that Suddenlink's presence in the Eastern District of Texas is unimportant, because Suddenlink's relevant witnesses are located in St. Louis.   Docket No. 43 at 5. Additionally, Defendants argue Defendants' state of incorporation in Delaware demonstrate strong ties to the proposed transferee district.  Docket No. 34 at 14.

While Defendants rely on their state of incorporation, Defendants have failed to explain why this creates a relevant connection to the actions giving rise to this case.  *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2012) (explaining that "a party's state of incorporation" is not listed as a factor in the §1404 analysis); *In re Volkswagen AG*, 371 F.3d at 206 (noting the public interest factor did not favor retaining the case when the residents of a particular district lacked any "meaningful connection or relationship with the circumstances of these claims").   Additionally, Suddenlink's presence in the Eastern District of Texas is important in the analysis, contrary to Defendants' argument.  Suddenlink is a major employer and supplier of services in this district, thus the Eastern District of Texas has a significant

interest in this dispute with respect to Suddenlink.  However, Plaintiff has not demonstrated that any of the other Defendants have a meaningful connection to this district.  Accordingly, the Eastern District of Texas has some local interest in the underlying suit, and thus this factor only slightly disfavors transfer.

### 2.   Remaining Public Factors

The other public factors, court congestion, familiarity of forum with governing law, and conflicts of law, are not disputed by the parties, thus are neutral in the analysis.

## CONCLUSION

Defendants have shown that it is clearly more convenient for the parties and witnesses to transfer the instant case to the District of Delaware.  Here, the relative ease of access to sources of proof and convenience of the witnesses strongly favor transfer, the availability of compulsory process favors transfer, while only local interest slightly disfavors transfer.  The remaining factors are neutral.  Accordingly, the Court **GRANTS** Defendants' Motion to Transfer Venue and **ORDERS** the case be transferred to the United States District Court for the District of Delaware.

**So ORDERED and SIGNED this 22nd day of April, 2013.**

**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**